The next case is Tepepan v. Garland. Good morning, your honors. My name is Judy Resnick. I'm the counsel for the petitioner Heriberto Tepepan. I'm appearing remotely over the Zoom link. This case, Mr. Tepepan is seeking an immigration benefit. He's specifically looking to obtain lawful permanent residence in the United States through a form of relief known as cancellation of removal for non-permanent residence under 8 U.S.C. 1229 B.B.1. Under the INA, that's under Section 240, Big A, little b, little 1. The statute is very specific about the requirements for this relief. The petitioner, subject alien, has to have been in the United States at least 10 years and has to have good moral conduct throughout that time period, also has to have a qualifying relative defined as a spouse, parent, or child who is a lawful permanent resident or U.S. citizen who has suffered exceptional and extremely unusual hardship. The definition of exceptional and extremely unusual hardship is not specified in the statute. It is usually considered to be a discretionary determination. The jurisdiction of this court over this case is settled under 8 U.S.C. 1252. Under the Real ID Act of 2005, the jurisdiction of this court was expanded over constitutional questions and questions of law, even if those were previously considered to be discretionary determination, not under the jurisdiction of this court. We contend that Mr. Tepepan was subjected to a due process violation rising to a constitutional claim that cannot be litigated before either the immigration judge or the Board of Immigration Appeals. Last fall, after the writing of our brief in this case, we were informed by the Department of Homeland Security that Assistant Chief Counsel Danielle Dussek, who had handled this case throughout its presentation in the immigration court from 2016 through the merits hearing in 2018, had been suspended from the practice of law. This was not known to DHS at the time. We were informed by DHS about this in 2021 by email to the General Immigration Bar and also by a particular letter to me regarding her participation in the Heriberto Tepepan case. It was not revealed for what reason Ms. Dussek had been suspended. DHS said that she was no longer working for DHS. During the course of the trial, during the merits hearing in November 2018, Ms. Dussek went through a line of questioning regarding Heriberto Tepepan's alleged criminal record, that he had been arrested for both driving under the influence and that he had allowed someone to drive his car. She alleged that he had not revealed such information on his application for this immigration benefit. However, Ms. Dussek never gave in, as an exhibit from DHS, any documentation regarding these alleged arrests or convictions or pleas of guilty. As your honors can see in the certified administrative record, there are only four exhibits, exhibit one being the notice to appear, exhibit two being the old asylum application, and exhibits three and four being connected by the petitioner regarding his application for the immigration benefit. There is no exhibit from DHS with copies of his alleged arrest record, conviction record, or anything connected to this derogatory information. This derogatory information only came out during the merits hearing during Danielle Dussek's cross-examination of the subject alien and principal Heriberto Tepepan. The judge acknowledged this derogatory information has a negative discretionary factor in her decision and stated that she felt he had no credibility or negative credibility because of this derogatory information. I allege, as counsel for Mr. Tepepan, that this was a violation of his due process rights rising to a constitutional claim and that the only fair remedy for Mr. Tepepan at this time is to remand this case back to the Board of Immigration Appeals and, in fact, from there to remand it back to the Immigration Court to present this case once again before the immigration judge before a DHS attorney who is not suspended from the practice of law who will abide by the rules of the practice of law and that he get a fair trial once again before the immigration judge on the questions and issues that were raised before the immigration judge back in 2018. Could I just ask, Ms. Resnick, what exactly is the due process violation? Are you saying the mere fact that the person who prosecuted the case has since been suspended, or is it really just the, in effect, what in criminal law we call a Brady violation or a discovery violation that the information about criminal record should have been provided to Mr. Tepepan or his counsel beforehand? Is that the problem? Well, yes, I think that's a problem that we never received this derogatory information beforehand that was sprung upon Mr. Tepepan at the merits hearing. It should have probably been given in as an exhibit, should have been provided to us beforehand. It made Mr. Tepepan- Did Mr. Tepepan acknowledge that he had been convicted of these crimes under this cross-examination? Yes, he did. So you're not suggesting that there is no actual record and that this was all made up by the lawyer for the government, right? No, Your Honor, but if we had been given these documents in advance by the assistant chief counsel, we could possibly have countered any allegations. For instance, if there was an allegation of conviction, but there was actually no conviction under the immigration law, we could have successfully countered that Mr. Tepepan- Again, that goes to the question of was the cross-examiner wrong about the facts, right? If it wasn't really a conviction, then, I mean, do we know that there wasn't really a conviction? Do you have evidence of that? Your Honor, we don't have any evidence of this and not having the documents in hand sorely prejudices our ability to refute the allegation that there was such a conviction. Okay. Mr. Tepepan had alleged that when he went trying to renew his license at the motor vehicle bureau that nothing came up. However, I don't have any evidence or independent confirmation of what Mr. Tepepan said. We don't know what his record is at the motor vehicle bureau other than Mr. Tepepan's allegation or his unconfirmed statement that he has no record other than, I think, a parking ticket or whatever. Okay. Is this an argument that was made before the BIA that we need additional time or we need a chance to contest these documents and they were sprung on us at the hearing? Well, Your Honor, first of all, we never had any documents. Ms. Dussek never gave in an exhibit. Yeah, I understand. But to the extent this is a, you know, argument about we were not afforded adequate notice and opportunity to be heard before the IJ because we learned, you know, we didn't have notice beforehand. Is this an argument that was made before the BIA? Your Honor, no, but in the sense we did allege that the immigration judge unfairly impugned the credibility of the petitioner appellant, the respondent in the lower court, because of his responses in the cross-examination to the allegations of DHS. And Ms. Mesnick, is this an argument that was made in your brief? Your Honor, at the time, we did make, we did raise that there was a constitutional claim and that there was a prejudice violation. Yes, I'm looking at the brief now because I didn't remember anything about this, and the due process argument is just about a page long and says essentially he was denied due process because he didn't get the right answer because the immigration judge and the BIA were wrong on the merits. There's no mention of any kind of discovery abuse or anything of the sort. Now, I realize that you've since gotten information suggesting that the person who prosecuted the case may have, for unspecified reasons, been unqualified or did something improper to get fired, but the facts about the discovery violation, if that's what it was, were known at the time of the hearing, right? I mean, the prosecutor, I'll call her the prosecutor, raised this question on cross-examination. It came out of the blue. There was an opportunity to object at that time that she shouldn't be allowed to ask these questions because you didn't get discovery of these facts or whatever. And I take it that argument has never been made before today. Is that right? Well, Your Honor, first of all, the discovery rules in an immigration court are significantly different from the discovery rules. I take it they are, but that doesn't help you. You're saying that it's a due process violation not to have provided this kind of discovery. I'm saying put aside whether the rules provide for this discovery or even whether it should be constitutionally mandated as a matter of basic fairness or anything of the sort. Assume you're right about that. You would have been just as right about that and had the same information to raise that issue before the immigration judge at the BIA and in your brief here, right?  except the suspension of the prosecutor. But there's no new information about the discovery problem if indeed that is even a thing in this kind of proceeding. So I'm just trying to make... First of all, just confirm the fact that this argument was not made before today and then I guess implicitly to ask you to comment on doesn't that mean it's been waived? No, Your Honor, first of all, because constitutional claims are not fairly heard before the board or by the immigration court. What about by us? What about in your brief? I mean, I think you agree you did not raise this in the brief. Right. You're correct, Your Honor. I could go into more detail about what the constitutional violation was against Mr. Tepepin. Okay. Thank you. Your Honor, I still feel though that the process was unfair in terms of that. Also, I think I did bring up that these alleged criminal violations took place more than 10 years before the time of his application. The statute calls for a 10-year look-back period. Even if it had been fairly presented to the immigration court in the form of documents, it should not have been considered by the immigration judge and should not have been a negative discretionary factor. Thank you, Ms. Resnick. You've reserved two minutes of rebuttal time. Yes, thank you. We'll hear from Mr. Chapman. Good morning, Your Honors, and may it please the court. My name is Casey Chapman, and I represent the respondent, the Attorney General, in this case. This court should dismiss the petition for review for two reasons. First, this court lacks jurisdiction to review the agency's discretionary determination, which is the relevant dispositive issue here. And even if this court has jurisdiction,  And second, this court lacks jurisdiction to consider the petitioner's unexhausted due process arguments. And actually, as an initial matter, I'll turn to that due process issue first. The petitioner focuses on the immigration judge's discretionary finding and how that criminal conviction was a negative credibility finding in his case. However, the board explicitly declined to rely on that finding in its decision and instead focused on this issue of exceptional and extremely unusual hardship. As the court has also noted, these specific arguments are presented by the petitioner for the very first time today. It comes as a surprise to me and to the government. So not only are they unexhausted before the Board of Immigration Appeals, which would have been the avenue by which she could have presented them because she claims that the due process violation infected the immigration judge's decision and the proceeding before the immigration judge. However, in the two years since the petitioner filed his administrative appeal brief, that argument was never raised. And in those four years since he first appeared before the immigration judge. As the court also noted, that issue is waived as it was not briefed before the court. Regardless, to the extent that this court can find or can read into a procedural due process violation, again, that claim is also unexhausted and this court lacks jurisdiction to review it. But even if this court finds jurisdiction and that argument wasn't exhausted, the petitioner's claims simply lack merit. The petitioner here filed an application for cancellation of removal. It was a full application and was supported by hundreds of pages of supporting documents. The petitioner was represented by counsel throughout his removal proceedings, both before the immigration judge and at the Board of Immigration Appeals through a counseled administrative appeal brief. And both the petitioner and his wife were able to fully testify at that hearing before the immigration judge. And there's nothing in the record to suggest that that testimony was truncated or shortened in any way or that the petitioner was unable to fully present his claim for cancellation of removal. So, to the extent that the petitioner's brief does argue a due process violation and today argues a due process violation, this court lacks jurisdiction to consider those unexhausted arguments in the first instance. Now, turning to the dispositive issue here, which is that exceptional and extremely unusual hardship determination, Congress has specifically divested this court of jurisdiction to review that very discretionary determination. And this court has repeatedly said, since 2006 in De La Vega v. Gonzalez and 2008 in Barco-Sandoval v. Gonzalez, that this court lacks jurisdiction to consider an exceptional and extremely unusual hardship finding. Could you address the effect of Guerrero-Lisbrella on our jurisprudence to that effect? I mean, are there situations in which, assuming that there is no dispute over facts, that we would now have jurisdiction over the exceptional and unusual hardship determination? This court, even after Guerrero-Lisbrella, continues to lack jurisdiction. This court has cited, admittedly, in two unpublished decisions since then, has cited Guerrero-Lisbrella for its main proposition, which is that questions of law include the application of law to undisputed facts. And in those two decisions, not only quoted that language, but also cited the decision and continued to find that this court lacked jurisdiction to consider those claims. This court has repeatedly stated that these sorts of weighing or balancing of factors is really the type of determination that is in the agency's wheelhouse, for lack of a better phrase. In Rosario v. Holder from 2010, this court, in the context of cancellation of removal, noted that that sort of analysis, the weighing of facts and circumstances, is the sort of value judgment that lies at the core of the board's discretion. This court has used similar language in referring to weighing and balancing of factors in Argueta v. Holder from 2010, as well as Singh v. Barr from 2019, and an unpublished decision, Kersiak v. Lynch from 2016. Here, Petitioner simply has quibbles with the agency's fact-finding, and those are insufficient, even repackaged as questions of law, are insufficient to raise this court's jurisdiction. In Carcamo from 2007, this court said that, absent clear proof that the factual basis for an immigration judge decision was unambiguously contradicted by the record,  Here, in Petitioner's brief, pages 15 and 17, claims that the immigration judge gave, quote, As those statements on their face reflect, this is that type of quarrel with the agency's fact-finding. And even though those arguments are cloaked in the language of a question of law, or even a constitutional question, this court has said in Xiaoji Chen, that merely asserting erroneous application or misapplication or misinterpretation is insufficient to turn a discretionary, unreviewable determination into a nondiscretionary determination that this court has jurisdiction to review. Even if this court finds jurisdiction to review this issue, the petitioner fails to present a colorable claim. This court said in Barco-Sandoval that a claim is not colorable if it is so insubstantial and so frivolous as to be inadequate to invoke federal question jurisdiction. In this case, the immigration judge explicitly acknowledged the petitioner's testimony that his wife was not employed and that he himself was the sole financial provider for his family. And contrary to the petitioner's argument that the immigration judge gave zero weight to the potential hardship, the immigration judge explicitly noted both the financial hardship and the emotional hardship that his removal would have on his two children remaining in the United States. Can I just ask, focusing just on those portions of the record, and I know there are others where there may be some discrepancies over factual findings, but there you seem to have a little corner of agreement. The I.J. said, I acknowledge there will be financial hardship, but it doesn't rise to the level of the standard. After Guerrero-Estrella, is your argument that that's what is happening there, is that's a weighing of factors and that amounts to not an application of law that would fall within this Supreme Court decision but outside of it? Yes, Your Honor. This court said in Xiao Jichen way back I think in 2006 that every sort of discretionary determination under the immigration statutes could in effect be reframed as like applying the law to factual circumstances. But this court continued to deny jurisdiction based on the fact that this is a sort of weighing of factors, a sort of balancing act that the agency is best positioned to determine, specifically because this is also found in that section in which Congress has specifically divested the court of jurisdiction to review these determinations. And this court, again, in those two unpublished decisions, has cited Guerrero-Estrella for that proposition that the court continues to lack jurisdiction. Those were Garcia v. Wilkinson from last year and Gomez-Diaz v. Barr from 2020. Likewise, the immigration judge noted that the petitioner's wife testified that she would continue to provide for the family, that she currently takes care of his son's medications, and there's no indication in the record that the petitioner's children would stop attending school or would stop even receiving the public benefits that they currently receive that help provide for their health care, or that the petitioner's son would no longer be able to receive the speech therapy which he receives at school. For these reasons, this court should dismiss the petition for review because it lacks jurisdiction to consider this discretionary determination and lacks jurisdiction to consider the unexhausted due process arguments. Thank you. We'll hear rebuttal. Your Honor, I think that this honorable court should seriously consider the unusual situation in which petitioner finds himself in that the assistant chief counsel who argued for the government in this case, Ms. Danielle Doucette, was at that time not an attorney in good standing and should not have handled the argument for DHS. It's an unusual situation. I've never seen this come up in my many years of practice in the immigration law. Our argument is that this unusual situation which only came to light after the brief was written only a few months ago where it was disclosed by DHS, this should be a factor that the court should consider and consider sending this case back on remand to the Board of Immigration Appeals and to the immigration court because of this unusual situation where the government attorney was not an attorney in good standing and should remand this case for a fair and impartial hearing before the immigration judge in order to give Mr. Depopan due process. This is an unusual situation. It's not covered in any of the precedents that Mr. Chapman mentioned. It's a situation that rarely comes up, but it's a factor that should be determined by the court to rise to the level of possible constitutional violations and should send this case back to the immigration court for a rehearing for Mr. Depopan. Thank you. We'll take the matter under advisement, and thank you both for your arguments this morning.